**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **Brett Donohoe** | ) | **CASE NO. 1:05-cv-2764** |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **Vs.** | ) | |
| | ) | |
| **J-Way Leasing, L.L.C., and** | ) | **JUDGE PATRICIA A. GAUGHAN** |
| **Smith Brothers, Inc.** | ) | |
| | ) | |
| **Defendants** | ) | **Memorandum Opinion and Order** |
| | ) | |
| | ) | |
| | ) | |

**INTRODUCTION**

Defendants J-Way Leasing & Marine L.L.C. ("J-Way") and Smith Brothers, Inc. ("Smith") have filed a Motion for Summary Judgment. (Doc. 49). Plaintiff Brett Donohoe has filed claims for maintenance and cure, personal injury and unpaid wages related to an accident aboard a barge owned by Smith and operated by J-Way. For the following reasons, Defendants' motion is GRANTED in PART.

1

**FACTS**

Plaintiff was employed by Defendant J-Way to build a jetty as part of the Coan River Small Navigation and Jetty project on the Coan River in Virginia.  Much of the work was performed aboard the barge "Gary," which was owned by Smith.  In Counts I and II of his Complaint Plaintiff claims that he was injured while aboard the Gary on July 23, 2004.  He seeks compensation under theories of Jones Act negligence and vessel unseaworthiness.  Count VII claims that Plaintiff is entitled to 183.5 hours of unpaid wages.  Count VIII alleges that Plaintiff was not afforded maintenance and cure for his injuries.

Before discussing the evidence submitted by the Parties, the Court notes that Counts III-VI are no longer at issue.  Counts III and VI were dismissed by stipulation of the parties.  (Doc. 52).  Counts IV and V are against only J-Way and allege that Plaintiff was injured while upon the Tug "Metzler" on or about July 28, 2004.[1]  The Court has reviewed the depositions and other evidence in great detail and notes that Plaintiff has not presented a scintilla of evidence that he was injured upon the Metzler, that J-Way was negligent with respect to the Metzler, or that the Metzler was unseaworthy.  Defendants have presented Plaintiff's own testimony that he was not injured after July 23, 2004 and Plaintiff concedes as much in his Response brief.  Accordingly, Defendants are entitled to summary judgment on Counts IV and V.

Moving to the evidence, the Gary is a barge that was equipped with a crane and other equipment to move boulders and fill for the jetty.  The Gary has two "spuds" and two

---

[1] Count V incorrectly incorporates only Paragraphs 1-5 of Count IV. However, it is clear from the following discussion of the alleged injury upon the "tug" and the structure of the Complaint that Count V is referring to the same July 28 injury upon the Metzler.

"spudwells." The spuds are 24" diameter hollow metal cylinders that are 36' and 40' long. The spudwells are 26" diameter holes at opposite corners of the barge. The spuds are inserted through the spudwells into the ground below the water in order to anchor the barge to a location.

When Plaintiff arrived at the Gary the spuds were already in place. He initially worked with two other employees, Dean Bennett and Gary Reese.[2] Bennett was eventually fired for misuse of company funds leaving only Plaintiff and Reese on the project. The parties dispute Plaintiff's role on the project. On the one hand, both Plaintiff and J-Way's owner Alan Johnson characterized Plaintiff as merely taking on more responsibility after Bennett left. Reese and a later resume of Plaintiff's refer to Plaintiff's position as a project manager or supervisor. It is undisputed that once Bennett left the project Plaintiff had more responsibility than Reese.

Plaintiff was allegedly injured on July 23, 2004, when it was time to move the Gary from the Coan River. One step in moving the Gary was to remove the spuds from the spudwells. Reese operated a crane to lift the spuds while Plaintiff guided the spuds out of the spudwells and onto the barge deck. All of the parties agree that "[w]hen spuds are taken out, the spudwells are supposed to be covered." *See* Defs' Br. at 4. One main issue in this lawsuit is the proper method for covering the spudwells.[3]

---

[2] Reese is currently incarcerated in Ohio for breaking and entering and has previous run-ins with the law including drug trafficking and a number DUI charges. His deposition provides a colorful description of the work environment on the Coan River project as involving a great deal of drinking and horseplay, both on and off the job.

[3] The Court will not consider the expert affidavit of Mark Emery submitted as Plaintiff's Exhibit B. The affidavit was signed and submitted months after the deadline for expert reports. Defendants filed a motion to strike the affidavit on this basis and Plaintiff

It is undisputed that as of July 23 the Gary was not equipped with dedicated spudwell cover plates.[4]  A September 30, 2003, survey of the Gary which was commissioned by J-Way states that "cover plates should be installed over open spudwells on deck . . . ."[5]  Reese testified that they "had plenty of other stuff" available to cover the spudwells, including plywood, buckets or crane mats.[6]  In addition, J-Way had an account at a local store.

While Plaintiff is vague on the timing of the incident, Reese testified that they prepared the barge on July 22 during the day and agreed to meet back at 11 pm to prepare the Gary for the tug which was to arrive around 12 pm.  Although Plaintiff did nothing to cover the spudwells, he spent much of the day "weld[ing] everything down, you know, [to] get it ready for a move."  In the words of Plaintiff, "[t]here's a bunch of work that you have to do so stuff doesn't roll off the barge into the water. . . .  A lot of welding, you know, getting stuff so that it won't fly off the barge."

---

      failed to respond.

[4]    Johnson testified that spudwell cover plates were later placed on the Gary.  Plaintiff points to Johnson's testimony as an admission that Army Corps of Engineers regulations require spudwell cover plates.  However, the cited testimony at pages 9-11 merely states that the project was subject to Corps regulations without discussing those regulations.  In the cited testimony at pages 20-22 Johnson admits that covers were eventually built, but effectively evades the issue of whether they are required.  The only other evidence cited for the proposition that Corps regulations were violated is the stricken Emery affidavit.

[5]    Plaintiff testified that there were no other safety measures for the spudwell such as yellow paint or a change in elevation.

[6]    The crane mats available on the Gary were approximately one foot thick, four feet wide and twenty to thirty feet long.  They would have to be moved by crane.

According to Reese, Plaintiff did not return to the project until one in the morning of the 23rd and by that time both were intoxicated. Sometime between one and two in the morning of the 23rd Plaintiff fell into the spudwell while working on the barge. He claims that at the time of his fall he "had zero for light" except for a "floodlight on top of a sea box." He was able to pull himself out of the spudwell and continued to assist with the job. It is from this fall that Plaintiff claims he was injured.

With respect to the maintenance and cure claim, Defendants state that all of Plaintiff's medical bills have been paid. In support of his claim, Plaintiff cites solely to pages 53-56 of the Johnson deposition. Those pages consist of Plaintiff's counsel stating that his client went to the emergency room and Johnson disclaiming any knowledge of whether Plaintiff went to the emergency room or not.

With respect to the wage claim, Plaintiff points to handwritten time sheets covering July 11 through July 23. Those time sheets indicate that Plaintiff worked 120 hours those two weeks. The handwritten paperwork also indicates that Plaintiff was paid through the 17th, which would leave 63.5 hours through the 23rd.[7] With respect to those two weeks, Defendants submit the testimony of Reese, who stated that they weren't working many hours because the project was pretty much complete. He contends that Plaintiff falsified the time sheets as the job slowed down to support their "after hours activities." Defendants also point to Johnson's testimony that Plaintiff "has been paid in full for everything that he's done."

---

[7]   Plaintiff's counsel also asserted at a deposition that Plaintiff was
      paid through the 17th.

**STANDARD OF REVIEW**

In accordance with Federal Rule of Civil Procedure 56, summary judgment is appropriate when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *LaPointe v. UAW Local 600*, 8 F.3d 376, 378 (6th Cir. 1993).  The burden of showing the absence of any such genuine issues of material facts rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrates the absence of a genuine issue of material fact.

*Celotex*, 477 U.S. at 323.  A fact is material only if its resolution might affect the outcome of the lawsuit under the governing law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Once the moving party has satisfied its burden of proof, the burden then shifts to the nonmoving party pursuant to Federal Rule of Civil Procedure 56(e), which provides:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.  If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

In ruling upon the motion, the court must afford all reasonable inferences and construe the evidence in the light most favorable to the nonmoving party. *Cox v. Kentucky Dept. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995); *United States v. Hodges X-Ray, Inc.*, 759 F.2d 557, 562 (6th Cir. 1985).  However, "[t]he nonmoving party must come forward with some significant

probative evidence to support its claim. If the nonmoving party fails to make a sufficient showing on an essential element, which it has the burden of proof, the moving party is entitled to summary judgment." *Brumbalough v. Camelot Care Centers, Inc.*, 427 F.3d 996, 1001 (6th Cir. 2005) (citing *Celotex*, 477 U.S. at 323-24).

**DISCUSSION**

There are three causes of action generally available to a seaman[8] who is injured while in service of a vessel. *Olsen v. Am. Steamship Co.,* 176 F.3d 891, 894 (6th Cir. 1999). The first is maintenance and cure, "in which he or she seeks wages plus reimbursement for medicine, treatment, and other expenses relating to his injury." *Id*. at 894. This is Plaintiff's Count VIII. The second cause of action is "an unseaworthiness action, a strict liability claim alleging that the the defendant shipowner failed to provide a vessel reasonably fit for its intended use." *Id*. at 895. This is Plaintiff's Count II. Third, "a seaman may bring a negligence action under the Jones Act, 46 U.S.C. § 688." *Id*. This is Plaintiff's Count I. The Court will address these three claims in turn, as well as Plaintiff's Count VII for wages allegedly withheld.

<u>Maintenance and Cure</u>

"[M]aintenance refers to a shipowner's obligation to provide a mariner with food and lodging if he becomes injured or falls ill while in service of the ship, while cure alludes to the duty to provide necessary medical care and attention." *West v. Midland Enters.*, 227 F.3d 613, 616 (6th Cir. 2000). Defendants point out that they have paid the only medical bill submitted to them by Plaintiff, and further argue that Plaintiff has no evidence of additional medical expenses

---

[8] The parties stipulated that Plaintiff was a seaman for purposes of the Jones Act and maritime law. (Doc. 52).

or food and lodging costs.  The only evidence Plaintiff can muster in support of his conclusory claim for maintenance and cure is a citation to the deposition of J-Way owner Alan Johnson.  The cited discussion consists of Plaintiff's counsel stating that his client went to the emergency room and Johnson disclaiming any knowledge of whether or not Plaintiff went to the emergency room.  Arguments of counsel are not evidence, and Johnson's answers merely confirm Plaintiff's total lack of evidence on this matter.  Because Plaintiff fails to set forth any significant probative evidence in support of his claim for unpaid maintenance and cure benefits, the Court grants summary judgment on Count VIII.

<u>Unseaworthiness</u>

"Generally, unseaworthiness is a question of fact for the jury and should not be resolved by the district court as a matter of law."  *Churchwell v. Bluegrass Marine, Inc.*, 444 F.3d 898, 904 (6th Cir. 2006).  Although the shipowner's duty to provide a seaworthy vessel is often stated in terms of absolute or strict liability, *Perkins v. Am. Elec. Power Fuel Supply, Inc.*, 246 F.3d 593, 602 (6th Cir. 2001), "that formulation is somewhat misleading, and the label 'strict liability' is imprecise."  *Cook v. Am. Steamship Co.*, 53 F.3d 733, 740 (6th Cir. 1995).  Rather, "[a] vessel is unseaworthy if the vessel and its appurtenances are not 'reasonably fit for their intended use.'"  *Churchwell*, 444 F.3d at 904 (quoting *Mitchell v. Trawler Racer, Inc.*, 362 U.S. 539, 549 (1960)).  The strict liability language relates to the fact that "[u]nseaworthiness is a condition, and how that condition came into being–where by negligence or otherwise–is quite irrelevant to the owner's liability for personal injuries resulting from it."  *Perkins*, 246 F.3d at 602 n.6 (quoting *Ferrara v. A. & V. Fishing, Inc.*, 99 F.3d 449, 453 (1st Cir. 1996)).

Among the conditions that may support a finding of unseaworthiness is defective or

missing equipment.  *Churchwell*, 444 F.3d at 904; *Rutherford v. Lake Mich. Contractors*, No. 00-1850, 28 Fed. Appx. 395, 400 (6th Cir. Jan. 7, 2002); *Perkins*, 246 F.3d at 602; *see also Merlino v. U.S. Steel Corp.*, No. 93-2403, 1996 U.S. App. LEXIS 8101, *13 (6th Cir. April 6, 1995) ("The lack of equipment adequate to perform an assigned task can constitute an unseaworthy condition.").  Plaintiff must show that the unseaworthy condition was the proximate cause of his injuries.  *Churchwell*, 444 F.3d at 904.  "[U]nseaworthiness proximately causes an injury if it 'played a substantial part in bringing about or actually causing the injury and the injury was either a direct result or a reasonably probable consequence of unseaworthiness.'" *Id.* (quoting *Miller v. Am. President Lines, LTD*, 989 F.2d 1450, 1464 (6th Cir. 1993)).

Defendants claim that Plaintiff was the sole cause of his injuries because he failed to cover the spudwells.  They also note that Plaintiff was the supervisor of the job.[9]  However, there is ample evidence that the lack of a spudwell cover played a substantial part in causing the injury and that the injury was a direct result of the lack of a spudwell cover.  The inspection

---

[9]  Although Defendants focus on the fact that Plaintiff was the supervisor, they do not make any arguments under the primary duty rule.  The primary duty rule provides that the ship's officer may not recover on a Jones Act or unseaworthiness claim when the only cause of the injury was the "officer's breach of his consciously assumed duty to maintain safe conditions aboard the vessel."  *Churchwell v. Bluegrass Marine, Inc.*, 444 F.3d 898, 909 (6th Cir. 2006).  Even if they had asserted this defense, there are genuine issues of fact as to whether Plaintiff ever assumed such a duty, whether he breached the duty, and whether his breach was the sole proximate cause of his injury.  *Id.*  There is contradictory evidence as to whether he was the supervisor, and if he was the supervisor, whether that role encompassed a "duty to maintain safe conditions aboard the vessel."  As the Court will discuss with respect to the other counts, Defendants' failure to provide a spudwell cover precludes the Court from finding that Plaintiff's own negligence was the sole proximate cause of the injury.

commissioned by J-Way stated that spudwell covers should have been installed. J-Way's owner admitted that spudwell covers should be used to cover the spudwells when spuds are removed. The photographs of the Gary reveal covers for other holes in the barge. Even a lay juror could understand that these could be used more easily than plywood, crane mats or buckets.

A related argument of Defendants is that Plaintiff had a safe alternative that he failed to use. However, the existence of a safe alternative does not bar an unseaworthiness claim. *Churchwell*, 444 F.3d at 908; *Tolar v. The Kinsman Marine Transit Co.*, 618 F.2d 1193, 1195 (6th Cir. 1980). Rather, when a seaman encounters an unseaworthy condition the existence of a safe alternative may serve to lessen the liability of the shipowner. *Tolar*, 618 F.2d at 1195. The result is a reduction of damages, not an absolute bar. *Churchwell*, 444 F.3d at 908. Moreover, in this case the proposed alternatives are not very good ones. A spudwell cover is a simple device that fits in the spudwell and is quickly and easily removed. The proposed alternatives, such as crane mats and buckets, have obvious deficiencies.[10] The mention of pieces of plywood or possible trips to the local store, accompanied by nothing more, does not provide for a safe alternative. Finally, Johnson's suggestion that they simply keep the spuds in the spudwells—i.e., hanging 30'-40' in the air—does not appear particularly safe either. In any event, all of these alternatives merely result in comparative negligence.

The Court recognizes that Plaintiff's expert report has been stricken and that he will face difficulties in presenting his case at trial. However, recent authority from the Sixth Circuit

---

[10] A crane mat is 1' thick, 4' wide and 20'-30' long. It is so large and heavy it must be moved by a crane. There is no evidence that it would not interfere with other activities if positioned over the spudwell. A bucket similarly has an obvious tendency to interfere with free movement around the area of the spudwell.

addressed a very similar situation. In *Churchwell v. Bluegrass Marine, Inc.*, the plaintiff was a cook who was injured when she spilled grease on the floor and fell. 444 F.3d at 901-02. She claimed that the vessel was unseaworthy because she should have been provided a grease can with handles and a mat with holes to drain the grease. *Id*. at 902. The defendants successfully excluded the testimony of the plaintiff's expert. *Id.* at 904. However, this was not fatal to the plaintiff's case. The Sixth Circuit recognized that the grease mat and handle issues "fall squarely within the type of knowledge that most persons obtain through everyday life experiences" and concluded that "a jury does not need expert testimony to conclude that Defendants' failure to provide grease mats and a container with a handle rendered Plaintiff's work environment unsafe." *Id*. at 905. Similarly, the issue here is whether the Defendants should have provided a fitted cover for a large hole, and whether a bucket, crane mat or similar device was a safe alternative. Although Plaintiff's case might be aided by an expert, he can certainly make his case without one.

### Jones Act

Plaintiff's Count I is under the Jones Act. The Jones Act allows seamen to maintain negligence actions for personal injuries suffered during the course of employment. 46 U.S.C. § 688; *Churchwell*, 444 F.3d at 907. J-Way breaches this duty if it fails to provide a safe workplace or to eliminate dangers that it knew or should have known about. *Id*.

Defendants repeat their "sole cause" and "safe alternative" arguments with respect to the Jones Act claim. However, Plaintiff's burden for proving causation is much lower for a Jones Act claim than an unseaworthiness claim. *Churchwell*, 444 F.3d at 908 (explaining that "the plaintiff need not establish proximate causation but 'only show that defendant's actions, however

slight, contributed in some way toward causing the plaintiff's injuries'"); *Rannals v. Diamond Jo Casino*, 265 F.3d 442, 448 (6th Cir. 2001) (explaining that the plaintiff need only show that the employer's negligence "played any part, even the slightest, in producing the injury or death for which damages are sought").  Accordingly, it is clear that summary judgment is not available to Defendants on this basis for the Jones Act claim.  With respect to the safe alternative argument, the standard is the same for unseaworthiness and Jones Act claims.  Even if a safe alternative exists, it is not an absolute bar to liability but merely gives rise to comparative negligence.  *Churchwell*, 444 F.3d at 908.

The Court is aware that Plaintiff may have engaged in a number of negligent acts, including possibly consuming alcohol prior to the accident.  However, in light of the "policy of providing an expansive remedy for seamen[,] . . . submission of Jones Act claims to a jury requires a very low evidentiary threshold."  *Rannals*, 265 F.3d at 447 (quotations omitted); *Chrandis, Inc. v. Latsis*, 515 U.S. 346, 354-55 (explaining that seamen are "emphatically the wards of admiralty").

Finally, Smith claims that it cannot be liable for a Jones Act violation because it was not Plaintiff's employer.  Smith is correct.[11]  *Cosmopolitan Shipping Co. v. McAllister*, 337 U.S. 783, 787 n.6 (1949); *see also McAleer v. Smith*, 57 F.3d 109, 115 (1st Cir. 1995) ("The Jones Act remedy is available only against the seaman's employer."); *Davis v. Bender Shipbuilding &*

---

[11]  Plaintiff cites to excerpts regarding the Longshoremen's and Harbor Workers' Compensation Act, *Duris v. Erato Shipping, Inc.*, 684 F.2d 352, 354 (6th Cir. 1982), or general maritime law duties to nonseamen.  *Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 628 (1959). These cases are not relevant to Plaintiff's Jones Act claim.

*Repair Co.*, 27 F.3d 426, 428 (9th Cir. 1994) (explaining that "the only proper defendant in a Jones Act action is the seaman's employer"); *California Home Brands, Inc. v. Ferreira*, 871 F.2d 830, 833 (9th Cir. 1989) ("It is well-settled that the Jones Act created a negligence cause of action only against the employer."); *Kukias v. Chandris Lines, Inc.*, 839 F.2d 860, 862 (1st Cir. 1988) ("It is elementary that only an employer can be liable under the Jones Act").  Accordingly, Smith is entitled to summary judgment on Plaintiff's Jones Act claim.

<u>Unpaid Time</u>

With respect to Plaintiff's claim for unpaid wages, the documents he submitted in opposition to Defendants' motion reveal that he was paid through July 17, 2004.  He has provided no evidence that he worked and was not paid for any period after July 23, 2004.  Accordingly, the only pay at issue is the 63.5 hours on the time sheet for July 18-23.  With respect to this, Defendants contend that Plaintiff falsified his hours, and point to the testimony of Johnson that Plaintiff was "paid in full for everything that he's done."  However, the later testimony appears to be Johnson stating his belief that nothing more is owed to Plaintiff, not that Plaintiff was paid for all of the time he worked.  With respect to falsification of hours, there is conflicting evidence upon which reasonable jurors could conclude otherwise.

Accordingly, Defendant J-Way is entitled to partial summary judgment with respect to all but the 63.5 hours at issue from July 18-23.  Plaintiff has presented no evidence that Defendant Smith owes him any wages, and to the extent the Complaint could be read to state a claim against Smith, summary judgment is appropriate.

**CONCLUSION**

Defendants are entitled to summary judgment on Counts IV, V and VIII.  Defendant

13

Smith is further entitled to summary judgment on Counts I and VII.  Defendant J-Way is entitled to partial summary judgment on Count VII as to all but the 63.5 hours Plaintiff allegedly worked from July 18-23.  The motion is DENIED as to Defendant J-Way on Count I and both Defendants on Count II.

      IT IS SO ORDERED.

                                          /s/ Patricia A. Gaughan
                                          PATRICIA A. GAUGHAN
                                          United States District Judge

Dated:  2/1/07